UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT, SS

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2005 SEP 19 PM 3 38

CLERK

BY _____

DEPUTY CLERK

VERONICA COLLINS-LOWE      )
    Plaintiff,      )
          )
    v.      )      Case No. 2:05·cv·253
          )
TOWN OF BARRE and DAVID      )
JENNINGS, DIRECTOR, TOWN      )
OF BARRE EMERGENCY MEDICAL      )
SQUAD,      )
    Defendants.      )

## COMPLAINT

**NOW COMES** the plaintiff Veronica Collins-Lowe, by and through her attorneys, Blackwood & Danon, P.C., and hereby complains against the defendants, Town of Barre and David Jennings, as follows:

### I.      Introduction

1.      This is a discrimination case brought under Title VII of the Civil Rights Act, 42 U.S.C. § 1983, and the Vermont Fair Employment Practices Act, 21 V.S.A. § 495 et seq.  On July 21, 2005, the United States Equal Employment Opportunity Commission issued the plaintiff her notice of suit rights.

### II.      Parties

2.      The plaintiff Veronica Collins-Lowe is a resident of the Town of Washington, County of Washington, State of Vermont.

3.      At all times relevant to this Complaint, Ms. Collins-Lowe was an employee of the defendant Town of Barre, as a part-time Emergency Medical Technician (hereafter "EMT").

BLACKWOOD & DANON, P.C.
ATTORNEYS AT LAW
P.O. BOX 875
BURLINGTON, VT 05402
(802) 863-2517

4.     The defendant Town of Barre, Vermont (hereafter the "Town") is a municipality and governmental body duly organized under the laws of Vermont, located in the County of Washington, State of Vermont.

5.     The Town operates, controls, maintains, and oversees the Town of Barre Emergency Medical Squad, and is the employer of all employees of the Town of Barre Emergency Medical Squad.

6.     The defendant David Jennings, upon information and belief, is a resident of the Town of Northfield, County of Washington, State of Vermont, and was at all times relevant to this Complaint the Director of the Town of Barre Emergency Medical Squad, and the supervisor of Ms. Collins-Lowe.  As Director of the Town of Barre Emergency Medical Squad, Director Jennings was the senior policymaker and decision maker for the Town of Barre concerning employment issues for its Emergency Medical Squad.

### III.     Factual Allegations

7.     Ms. Collins-Lowe is an EMT.  Her qualification level was as an EMT "Basic" (or "Level B").

8.     In January 1999, Ms. Collins-Lowe was hired by the Town of Barre Emergency Medical Squad (hereafter "EMS") as a part-time EMT to work on a per diem basis to do "fill-in" shift work.  The purpose of part-time, per diem EMTs is to complement the permanent full-time EMTs and the auxiliary ambulance squad, such that when there is an emergency call, there is always backup coverage.

9.     From the date of her hire, EMT co-worker, Brian Miller subjected Ms. Collins-Lowe to constant derogatory remarks about women.  He would say such things as, "Women

should be at home," "Women can't do this work," and "Women can't lift." He would also often refer to women as "cunts."

10.    It was common knowledge that Mr. Miller was discriminatory towards women. Upon information and belief, many co-workers complained to Director Jennings about Mr. Miller's offensive conduct. Furthermore, conduct of a sexual nature was common in the EMS workplace and was well known by those who worked there.

11.    On or about May 22, 2000, former EMT Colleen Jackson formally complained to Director Jennings about conduct of a sexual nature on the part of Mr. Miller. Director Jennings allegedly gave Mr. Miller a verbal warning.

12.    Despite this alleged verbal warning, on or about January 12, 2001, Mr. Miller grabbed Ms. Collins-Lowe's breasts while she was leaning over a desk to answer the phone.

13.    After this incident, on about four occasions, Mr. Miller grabbed Ms. Collins-Lowe from behind and rubbed his genital area against her buttocks. The first two times this happened Ms. Collins-Lowe told Mr. Miller under no uncertain terms that this conduct was unwelcome. After the second two occasions when Mr. Miller grabbed her from behind, Ms. Collins-Lowe slapped him across the face.

14.    Accordingly, Director Jennings knew or should have known that Mr. Miller was subjecting female employees to unwanted conduct of a verbal and physical nature but did not take prompt and appropriate remedial action to stop the unwanted conduct and failed to monitor the workplace to ensure it was free of such conduct following Ms. Jackson's complaint about Mr. Miller's offensive conduct.

15.    On February 16, 2001, Ms. Collins-Lowe wrote to and also spoke with Director Jennings seeking redress for Mr. Miller's offensive and sexually harassing conduct.

16.     Upon information and belief, Mr. Miller was suspended allegedly without pay for two weeks.  Also, about a month after her complaint, Director Jennings asked the permanent EMS employees (not the per diem employees) to attend a two-day sex harassment training. Upon information and belief, not all employees attended the training.

17.     Ms. Collins-Lowe's co-workers were upset with her that she filed a formal complaint against Mr. Miller.  During his suspension, they even allegedly took up a collection for Mr. Miller.

18.     Several co-workers asked Ms. Collins-Lowe why she had filed a complaint against Mr. Miller and treated her as a traitor.  Director Jennings stopped talking to her.

19.      After Ms. Collins-Lowe made her complaint about Mr. Miller, her co-workers also avoided her and would not sign up to work with her.  She would sign up for coverage, but since no one would sign up to be her partner, she could go to the office but could not go out on any emergency calls.

20.     Other EMTs told her that nobody was going to work with her now.  Another EMT co-worker told her that Director Jennings told him that EMTs did not have to sign up with her to do coverage.

21.     In addition, EMS stopped scheduling Ms. Collins-Lowe to do shift work and gave the hours to another Level B EMT even though he was a new hire and did not have the seniority necessary to be given shift work before it was offered to Ms. Collins-Lowe.

22.     It was around this time that Ms. Collins-Lowe applied for a permanent part-time auxiliary position.  She was asked to do "fill-in" auxiliary work, but ultimately was not hired for the position.

23.     When a co-worker told her she had no chance of getting the job, in or about December 2001, she quit the "fill-in" auxiliary position out of frustration with not being able to get hours, having no hope of advancement, and because of the stress and the humiliation of being shunned at work.

24.     In further retaliation, just around the time Ms. Collins-Lowe applied for the auxiliary position, the department changed the requirements for the position from Level B EMT to an Intermediate EMT (hereafter "Level I").

25.     In spring 2001, Ms. Collins-Lowe took the Level I-EMT exam but was under so much stress at work she failed the written portion of the exam.

26.     Director Jennings claimed that Ms. Collins-Lowe was not given any shifts because she is a Level B EMT and not a Level I EMT.  However, other Level B EMTs were scheduled for shift work.

27.     Accordingly, Director Jennings knew or should have known that Ms. Collins-Lowe's co-workers were retaliating against her because she complained of sexual harassment and did not take prompt and appropriate remedial action to stop the retaliatory conduct and failed to monitor the workplace to ensure it was free of such conduct.

28.     Furthermore, Director Jennings himself unlawfully retaliated against Ms. Collins-Lowe for complaining of sexual harassment.

29.     On or about May 25, 2001, Ms. Collins-Lowe filed a charge of employment discrimination with the State of Vermont Attorney General's Office.

30.     After a lengthy and thorough investigation, on November 1, 2004, the Attorney General's Office issued its decision concluding that the evidence supported a determination that the Town of Barre discriminated against Ms. Collins-Lowe for reasons related to her sex, and

BLACKWOOD & DANON, P.C.
ATTORNEYS AT LAW
P.O. BOX 875
BURLINGTON, VT 05402
(802) 863-2517

5

retaliated against her for complaining about the discrimination, in violation of Vermont's Fair Employment Practices Act. (*See* copy of relevant portion of the Attorney General's decision attached here as Exhibit A.)

31.     On July 21, 2005 the U.S. Equal Employment Opportunity Commission issued its determination that it had adopted the findings of the Attorney General's Office and provided Ms. Collins-Lowe with your notice of suit rights. (*See* copy of Dismissal and Notice of Rights attached here as Exhibit B.)

## IV.     Claims For Relief

### A.     Title VII of the Civil Rights Act

32.     By the actions described above, the defendants failed to take prompt and appropriate remedial action effectively designed to stop the unwanted conduct of discrimination and retaliation against the plaintiff.

33.     As a result of the defendants' discriminatory and retaliatory actions, the plaintiff was denied employment opportunities and suffered economic and emotional distress damages.

### B.     Vermont Fair Employment Practices Act

34.     By the actions described above, the defendants failed to take prompt and appropriate remedial action effectively designed to stop the unwanted conduct of discrimination and retaliation against the plaintiff.

35.     As a result of the defendants' discriminatory and retaliatory actions, the plaintiff was denied employment opportunities and suffered economic and emotional distress damages.

## V.     Prayer for Relief

**WHEREFORE,** the plaintiff respectfully prays that this Court:

1.      Find that defendants discriminated and retaliated against the plaintiff and unlawfully denied her employment opportunities.

2.      Award the plaintiff compensatory damages, including but not limited to past and future pay and benefits, mental anguish, inconvenience, and embarrassment, in an amount to be determined at trial;

3.      Award the plaintiff punitive damages in an amount to be determined at trial;

4.      Award the plaintiff reasonable attorney's fees and costs;  and

5.      Award the plaintiff such other relief as the Court deems just and proper.

**THE PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Dated at Burlington, Vermont, this 19th day of September 2005.

**BLACKWOOD & DANON, PC**

By
        Beth A. Danon, Esq.
        P.O. Box 875
        Burlington, VT  05402-0875
        (802) 863-2517

**ATTORNEYS FOR PLAINTIFF**

Exhibit A

STATE OF VERMONT
OFFICE OF THE ATTORNEY GENERAL

Veronica Collins-Lowe, Complainant

       v.

Town of Barre, Respondent

FEPA File No.:  CW01-10106

EEOC File No.:  16KA100077

<u>Conclusion</u>

Vermont's Fair Employment Practices Act prohibits an employer from discriminating against an individual for reasons related to sex, or retaliating against an individual for having complained about such discrimination.  Based on the above-stated findings, there is sufficient evidence to support the following findings:

(1) Respondent knew or should have known that EMT Brian Miller was subjecting female employees to unwanted conduct of a verbal and physical nature;

(2) Respondent failed to take prompt and appropriate remedial action effectively designed to stop the unwanted conduct, and failed to monitor the workplace to ensure that it was free of such conduct following EMT Jackson's complaint and continuing through Complainant's in-house complaint;

(3) Complainant's co-workers retaliated against her, and she was denied employment opportunities with Respondent, for reasons related to her complaining about EMT Miller's conduct of a sexual nature;

(4) Respondent knew or should have known about said retaliation yet failed to take action to stop it.

The above-stated evidence supports a determination that Respondent discriminated against Complainant for reasons related to her sex, and retaliated against her for complaining about said discrimination, in violation of Vermont's Fair Employment Practices Act.

_Jean V. Lowell_
Jean V. Lowell, Civil Rights Investigator

_____
Date

_____
Sandra Everitt, Esq., Assistant Attorney General for Civil Rights

ambulance.  When necessary, the SOG provides, another ambulance team that is composed of two EMTs Level I or higher can be split up to form two teams of one Level B EMT and one higher-level EMT.  Additionally, as reported to this investigator, when the dispatcher put out a call for coverage, the dispatcher did not specify a required Level of the EMT(s) needed for coverage.  As a result, it was possible that two Level B EMTs would respond to the call for coverage.  This brings into question whether Complainant or any other Level B EMT was, or should have been, prohibited from signing up for coverage shifts for which another Level B had already signed up.

19

Exhibit B

EEOC Form 161 (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: Veronica Collins-Lowe<br>Route 110<br>P.O. Box 76<br>Washington, VT 05675 | From: **Boston Area Office**<br>**John F. Kennedy Fed Bldg**<br>**Government Ctr, Room 475**<br>**Boston, MA 02203** |

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR § 1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16K-2001-00077 | Anne R. Giantonio,<br>Intake Supervisor | (617) 565-3189 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

☐ Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

☐ While reasonable efforts were made to locate you, we were not able to do so.

☐ You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☒ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge

☐ Other (briefly state)

## - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this Notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_(signature)_                                                JUL 2 1 2005

Encosure(s)

Robert L. Sanders,
Area Office Director

                                                             (Date Mailed)

cc:   Unknown
TOWN OF BARRE
C/O Carl Rogers, Town Manager
P.O. Box 116
Websterville, VT 05673